**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

Jason Thompson # 31082-007
3901 Klein Blvd.
Lompoc, Ca. 93436

FILED
RECEIVED BY MAIL

AUG 2 8 2017 agn

Superior Court of the
District of Columbia
Washington, D.C.

*Plaintiff*

*vs.*

Unity Health Care
1901 Dst. SE
Washington, D.C. 20003
*Defendants*

CIVIL ACTION No. 17 - 0 0 0 6 1 0 6

## COMPLAINT

1.  **Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.**

See Attached Statement Of Facts

**Wherefore, Plaintiff demands judgement against Defendant in the sum of $ 1,000,000** **with interest and costs.**

Phone:

**DISTRICT OF COLUMBIA, SS**

Jason Thompson **, being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendant to the plaintiff, exclusive of all set-off and just grounds of defense.**

Jason Thompson

(Plaintiff                                      Agent)

**Subscribed and sworn to before me this** 9th **day of** August **20** 17 **.**

_____
(Notary Public/Deputy Clerk)

FORM CV-1013/ Nov. 00

# Statement Of Facts

1.) In 2016, the Plaintiff, Jason Thompson, was housed as a inmate at Corrections Corporation Of America's, Correctional Treatment Facility (CCA-CTF).

2.) CCA-CTF, was a privately owned, non-government, for profit prison, located at 1901 E ST. SE, Washington, D.C. 20003.

3.) Around June of 2016, the Plaintiff suffered an injury to his left arm for which he requested medical assistance and treatment from Unity Health Care.

4.) Unity Health Care, was the medical health care provider which provided medical assistance and treatment for inmates housed at CCA-CTF.

5.) Plaintiff was soon after seen and examined by Unity Health Care Supervisor, Charles Sarbeng.

6.) Mr. Sarbeng determined the Plaintiff was likely suffering from a left bicep tendon rupture.

7.) Mr. Sarbeng then made preparations for the Plaintiff to be seen by Robert Wilson-M.D., an Orthopeadic Surgeon, at Howard University Hospital.

8.) When Plaintiff was seen by Dr. Wilson, Dr. Wilson confirmed Plaintiff suffered a left bicep tendon rupture injury and recommended surgical repair.

9.) Unity Health Care scheduled a September 19, 2016, surgery with Howard University and Dr. Wilson to repair Plaintiff's injury.

10.) On September 19, 2016, Plaintiff's surgical repair was performed by Dr. Wilson.

11.) During Plaintiff's September 19, 2016 surgery, Plaintiff suffered a significant nerve injury caused by Dr. Robert Wilson.

12.) Upon Plaintiff being discharged from Howard University Hospital after surgery on September 19, 2016, CCA-CTF transportation Correction Officers were provided post-operation prescriptions, recommendations, and Doctors Orders for Plaintiff.

13.) These prescriptions, recommendations, and Doctors Orders included, narcotic pain medication prescriptions, recommendation/order for " No Restraints to be placed on left upper extremity", and a recommendation/order that Plaintiff receive close medical observation for the next 24 hours.

14.) Upon Plaintiff's arrival at CCA-CTF after surgery on September 19, 2016, he was taken to the facilities medical department, where CCA-CTF transportation Correction Officers delivered to Unity Health Care staff Plaintiff's post-operation prescriptions, recommendations, and Doctors Orders.

15.) Plaintiff was also examined by Unity Health Care medical staff who reviewed his post-operation prescriptions, recommendations, and Doctors Orders the evening of September 19, 2016.

16.) Unity Health Care failed to admit Plaintiff in the facilities Infirmary inmate housing unit on the evening of September 19, 2016.

17.) Unity Health Care's failure to immediately admit Plaintiff in the facilities Infirmary caused Plaintiff not to be afforded 24 hour close medical post-operation observation.

18.) In accordance with Unity Health Care's policy and procedures, inmates whom were discharged from a Hospital after having a major surgery performed are admitted in the facilities Infirmary upon returning to CCA-CTF.

19.) About 5 days after Plaintiff's surgery, he was seen by Unity Health Care's Doctor, M. Crenshaw.

20.) Dr. Crenshaw provided Plaintiff with a written Doctor's Order for no restraints to be placed on his left upper extremity.

21.) Dr. Crenshaw supplied Plaintiff 2 copies of this order. One for Plaintiff to give to his housing unit Correctional Officer and one for Plaintiff's own record.

22.) Dr. Crenshaw made an expiration date of the "no restraint" order of 9-29-16.

23.) Dr. Crenshaw further informed Plaintiff that he would be returning to Howard University Hospital for a post-operation exam by 9-29-16, and that if the post-op exam determines the placement of restraints to my left upper extremity to still be inappropriate, she would extend her "no restraint" order.

24.) No restraint orders by Hospital and Unity Health Care medical Doctors are or were honored and obeyed by CCA-CTF security during the time Plaintiff was an inmate at CCA-CTF.

25.) On or about 9-29-16, Plaintiff was transported to Howard University Hospital for a post-op exam.

26.) During the 9-29-16 post-op exam, doctors removed Plaintiff's soft cast.

27.) Removal of the soft cast was necessary to prevent additional undesirable elbow problems and to allow Plaintiff to begin to regain range of motion. However, the removal of the soft cast left Plaintiff's healing arm unsecure from excessive movements and more vulnerable to further injury and or aggravation.

28.) Plaintiff was instructed during the 9-29-16 post-op, not to place any weight on his healing arm.

29.) Doctor's once again provided CCA-CTF, transportation Correction Officers with notes for prescriptions of narcotic pain medication and recommendations that no restraints be placed on Plaintiff's left upper extremity.

30.) Doctor's also requested that Plaintiff be returned to Howard Hospital 20 days later for an additional post-op exam.

31) Upon arriving back at CCA-CTF from the 9-29-16, post-op exam. Plantiff was not seen by Unity Health Care medical staff for an examination and or review of new prescriptions and updated recommendations. Especially, pain meds and renewed, "no restraint to left upper extremity", Doctor's order.

32.) On the afternoon of 9-29-16, Plaintiff's unit Officer, Chioma, contacted Unity Health Care's medical department at CCA-CTF several times by phone due to Plaintiff's request to be seen and afforded his narcotic pain medication as well as an updated Doctor's order for "no restraint to left upper extremity".

33) Plaintiff continued to request medical attention to the evening shift which relieved Officer, Chioma, on 9-29-16.

34.) Around 11:00 PM, on 9-29-16, CCA-CTF, Cheif of Security, informed Plaintiff he would be escorted to Unity Health Care's medical department to be seen by medical staff, but since his Doctor's order for "no restraints to left upper extremity",

had expired and not yet renewed by Unity Health Care's medical department, Plaintiff must be placed in arm restraints during the escort.

35.) Because Plaintiff was warned by Doctors of the risk and potential harm the placement of restraints and unnecessarry physical contact or activity to his left upper extremity would likely cause. Along with Unity Health Care's, Dr. M. Crenshaw's prior notice to Plaintiff that if his 9-29-16, surgical post-op exam deemed it appropriate for the initial "no restraint to left upper extremity", Doctor's order to be extended; it should and would be done. Plaintiff refused to allow the placement of any restraints to his healing and injured left arm.

36.) On 9-30-16, Plaintiff, who was suffering chest pains due to anxiety created by the severe pain from his injured and healing left arm in which Unity Health Care had failed to supply his prescribed narcotic pain medication to him in several days, continued to complain to his unit officer for medical attention and his medication.

37.) Unity Health Care staff, Charles Sarbeng, instructed CCA-CTF correctional officers to escort Plaintiff to the medical department and that it would not be harmful to Plaintiff by placing restraints on Plaintiff's injured and healing left arm.

38.) Soon after, CCA-CTF security supervisor's, Sgt. Tyrone Kennedy and Lt. Saunders came to Plaintiff's cell to escort Plaintiff to medical.

39.) However, after viewing Plaintiff's left arm, which was severely swollen from the upper forearm to the finger tips along with 3 seperate incisions including one on the wrist containing dozens of stitches. Sgt. Tyrone Kennedy and Lt. Saunders refused to escort Plaintiff, because they did not feel comfortable placing restraints on Plaintiff in his condition as Unity Health Care staff, Charles Sarbeng, informed the security they could do.

40.) Around 6:30 PM., on 9-30-16, CCA-CTF security Captain Bruce and Lt. Hines came to Plaintiff's cell to escort him to medical.

41.) Captain Bruce explained that Unity Health Care staff, Charles Sarbeng had approved and cleared Plaintiff to have restraints placed on him in order to be escorted to medical to receive attention and treatment.

42.) Because Plaintiff had no other option to be afforded medical attention by Unity Health Care, he submitted to the placement of the restraints and was escorted to medical.

43.) Once at medical, Plaintiff was seen by Unity Health Care's, Nurse Strothers and Charles Sarbeng.

44.) Plaintiff began to state his complaints to Mr. Sarbeng regarding Unity Health Care's failure to supply his narcotic pain meds and Unity Health Care's approval for the placement of the restraints in which were causing great discomfort and severe pain.

45.) Captain Bruce, whom Ms. Strothers and Mr. Sarbeng allowed to be present during this priviledged conversation along with

Lt. Hines injected herself into this priviledged medical discussion by informing Mr. Sarbeng not to update or supply Plaintiff a renewed Doctor's Order for "No restraints to left upper extremity", because the Warden was opposed to it.

46.) Plaintiff immediately complained to Mr. Sarbeng and Ms. Strothers that this was a "Confidential" and "Priviledged" medical conversation and that by Captain Bruce and Lt. Hines being allowed to be present and participate was in violation of HIPPA.

47) Plaintiff further complained that any medical recommendations, orders, or opionion submitted by Unity Health Care's medical staff should be done so according to what's appropriate for the Plaintiff based on his current medical condition, not based on the wishes and opinions of non medical correctional staff.

48.) Charles Sarbeng stated to Plaintiff, "If Captain Bruce and Lt. Hines wanted to be present they could" and that "If they didn't want medical to provide a Doctor's Order for "No restraints to left upper extremity", Unity Health Care would not do so".

49.) After Plaintiff was returned to his housing unit on the night of 9-30-16, from Unity Health Care's medical evalution. Plaintiff was injured by the method used by Captain Bruce and Lt. Hines in removing the restraints from Plaintiff's wrist causing severe bruising, swelling, and pain.

50.) Specifically, Lt. Hines and Captain Bruce used what's known as a suicide cutdown knife to rip and tear the plastic Flexcuff restraints off of Plaintiff's wrist. A process which took approximately ten minutes to complete.

51.) On the morning of 10-1-16, Plaintiff awoke to discover significant red and purple bruising and swelling on his left wrist and forearm area, a result of the use and removal of the Flexcuff restraints.

52.) Plaintiff was also suffering severe pain greater than the pain he was suffering prior to the placement of the restraints.

53.) Plaintiff informed his unit Officer Bruce of his injury and condition on the morning of 10-1-16 and Officer Bruce documented this in the CCA log book.

54.) Plaintiff also complained about his injury and condition to Unity Health Care's medical staff during sickcall on 10-1-16.

55.) Plaintiff continued to complain of his injury, bruising, and pain caused by the application and removal of the Flexcuff restraints to his unit Officer and Unity Health Care's staff when they visited his unit; requesting to receive treatment for the next 2 days.

56.) On or about 10-3-16, CTF-CCA security Supervisor's, Captain Crawley and Lt. Gillice came to escort Plaintiff to the medical department to be examined by Unity Health Care. Before doing so, they phoned Unity Health Care's Supervisor, Charles Sarbeng, to ask if it was safe and appropriate to apply flexcuff restraints to Plaintiff's injured and wounded left arm.

57.) Unity Health Care's Charles Sarbeng, once again advised and authorized the use of Flexcuff's on Plaintiff's injured and wounded left arm as safe and harmless.

58.) The use of the flexcuff restraints authorized by Unity Health Care on 10-3-16, created extreme pain and discomfort to Plaintiff, so much that he screamed out in pain begging for them to be removed all the way to the medical department.

59.) Once Plaintiff reached the medical department and was seen by Charles Sarbeng and other Unity Health Care staff, Plaintiff continue to scream out in pain begging for Charles Sarbeng to request the removal of the restraints to reduce the pain and for Mr. Sarbeng to see the damage, bruising, and other injury caused by the Flexcuff's.

60.) Charles Sarbeng and other Unity Health Care medical staff ignored Plaintiff pleas and injuries by failing to request the removal of the restraints at any point during the examination and stating that "Plaintiff appeared to be healing well."

61.) Plaintiff was returned to his housing unit and the restraints were once again removed, leaving Plaintiff with increased bruising and indentations in his injured and wounded arm from the restraints digging into his skin in the area of the stitches on his left wrist.

62) On or about 10-5-16, Plaintiff was once again escorted to the medical department to have is arm examined by Unity Health Care.

63) Becuase Plaintiff was now wearing large leg iron shackle restraints on his arms which allowed less restrictive arm motion and movement, Unity Health Care's, Charles Sarbeng was able to see for the first time the indentations and purple bruising caused by the use of the flexcuff's.

64) At that time Unity Health Care's, Charles Sarbeng stated "Oh, that's what you were talking about the last time I saw you". Plaintiff informed Mr. Sarbeng that if he would've requested the removal of the flexcuff's during the prior exam, he would've been able to see the injured area.

65) Charles Sarbeng informed the Plaintiff that Plaintiff would be admitted into the Infirmary Unit, where he would be afford 24 hour close observation by Unity Health Care's medical staff in order to receive pain management and to prevent further injury.

66.) The following evening, Plaintiff was admitted into the Infirmary unit at CCA-CTF.

67.) On or about 10-7-16, the day after Plaintiff was admitted into the Infirmary; he was seen and examined by Unity Health Care's, Dr. O'Donovan, who is the Supervisor of the Infirmary unit.

68.) Dr. O'Donovan noticed and documented the bruising caused by the use of the Flexcuffs.

69.) Dr. O'Donovan informed Plaintiff that no Unity Health Care medical staff should've advised against Howard University Hospital's Surgical recommendation for "No restraints to left upper extremity".

70.) Dr. O'Donovan drafted a Doctor's Order for "No restraints to left arm until Surgically cleared" for Plaintiff. Supplied Plaintiff a copy of the Doctor's Order. Place a copy of the Doctor's Order on Plaintiff's room door so all other staff could see and contacted CCA-CTF Warden Charlie Peterson to inform him that under no circumstance should Plaintiff be placed in restraints of any Kind to left arm until further notice.

71.) Plaintiff ultimately remained in the Infirmary for about 3 months. During this time, no restraints of any kind were ever placed on Plaintiff's injured left arm again.

72.) Plaintiff received weekly medical exams while in the Infirmary unit to review his progress and treatment plans.

73.) During these medical exams, Plaintiff repeatedly complained of suffering severe pain in his left hand and wrist, which he believed to be a result of the use of restraints prior to being admitted into the Infirmary.

74.) Plaintiff also made repeated complaints of severe pain, numbness, and burning sensations in his left arm consistant with nerve related injuries.

75.) Plaintiff was prescribed narcotic opiods as well as an unknown medication used to treat nerve pain.

76.) On or about 10-19-16, Plaintiff was transported from CCA-CTF Infirmary to Howard University Hospital for a follow-up post-op exam and review.

77.) During this 10-19-16, post-op exam, Dr. Robert Wilson the Surgeon whom performed Plaintiff's surgery, deemed it necessary to have Plaintiff placed in a large hard cast which ran from Plaintiff's shoulder to his fingers on his left upper extremity.

78.) This cast was deem necessary to protect Plaintiff from any further harm, aggravation, and or injury to his healing arm such as that caused as a result of Unity Health Care's authorizing the use of restraints to Plaintiff's left upper extremity against recommendations.

79.) Dr. Robert Wilson dismissed Plaintiff's complaints that he was possibly also suffering pain due to Dr. Wilson injuring nerves during surgery by informing Plaintiff, there was no injuries.

80.) In the weeks following the 10-19-16, post-op exam, Plaintiff continued to suffer from severe pain in his wrist area as a result of the use of the restraints as well as nerve injury pain.

81.) Plaintiff also informed Unity Health Care Infirmary staff including Dr. O'Donovan and her Assistant Mrs. Tanou, he believed Howard University Hospital

and Dr. Robert Wilson had injured him during surgery and was neglecting to acknowledge and treat the injury.

82.) Plaintiff informed Dr. O'Donovan and P.A. Tanou, he was in the process of serving Howard University Hospital and Dr. Robert Wilson with a "Notice Of Intent To File Suit" for Medical Malpractice and therefore, did not wish to receive medical care by Howard University Hospital or Dr. Robert Wilson any more in the future.

83.) Dr. O'Donovan and P.A. Tanou, informed Plaintiff that they inform Administrator, Charles Sarbeng of the situation so he could begin a search for a new Orthopeadic to substitute medical care.

84.) P.A. Tanou also informed Plaintiff, that she had compiled a list of Orthopeadic's which she provided Administrator Sarbeng to assist in his search for a new Doctor for Plaintiff.

85.) Plaintiff inquired every week with P.A. Tanou and Dr. O'Donovan of the status of Unity Health Care's search for a new Orthopeadic.

86.) P.A. Tanou and Dr. O'Donovan repeatedly informed Plaintiff that Administrator, Charles Sarbeng had not informed them if he had yet found Plantiff a new Doctor.

87.) On or about 11-20-16, Plaintiff was once again transported to Howard University Hospital for a Post-op exam scheduled by Unity Health Care to receive care and treatment by Dr. Robert Wilson against Plaintiff's prior objection.

88.) During this exam Plaintiff served Howard University Hospital and Dr. Robert Wilson a "Notice Of Intent To File Suit".

89.) In spite of this notice, Dr. Robert Wilson had his assistant remove Plaintiff's cast.

90.) Dr. Robert Wilson also once again falsely informed Plaintiff that he suffered no injury as a result of Surgery.

91.) Plaintiff continued to complain to Unity Health Care Infirmary Doctor O'Donovan and P.A. Tanou that he still suffered severe nerve pain and needed to be seen by a new Doctor to treat his injury.

92.) Dr. O'Donovan and P.A. Tanou informed Plaintiff according to Howard University Hospital's Dr. Robert Wilson there was no injury and Plaintiff was healing well.

93.) Dr. O'Donovan and P.A. Tanou did however, increase the dosage of an unknown prescription pain medication prescribed to Plaintiff to reduce his nerve pain.

94.) Around November of 2016, Plaintiff served Unity Health Care a "Notice Of Intent To File Suit".

95.) This notice was given by Plaintiff to P.A. Tanou, who stated she would deliver said notice to Administrator Charles Sarbeng.

96.) About January of 2017, Plaintiff was discharged from the Infirmary unit by Unity Health Care medical staff.

97.) Prior to Plaintiff's discharge, Unity Health Care failed to have Plaintiff seen by a Specialist to understand and or diagnose the source of the sever pain which he still suffered.

98.) After being released from the Infirmary, Plaintiff returned back to his general population housing unit.

99.) In the months following Plaintiff's release from the Infirmary, he continued to complain to Unity Health Care Dr. M. Crenshaw he still suffered extreme pain and wished to be seen by a Specialist.

100.) Dr. M. Crenshaw submitted a referal for Plaintiff to be seen by a Orthopeadic Specialist around March of 2017.

101.) About April of 2017, Plaintiff was seen by an Orthopeadic Surgeon at Washington Hospital Center. Whom after ordering and reviewing an MRI of Plaintiff's left arm, discovered a significant nerve injury in which Plaintiff suffered during surgery.

102.) The Washington Hospital Center Surgeon informed Plaintiff this newly discovered nerve injury was likely the cause of the severe pain which Plaintiff suffered for months.

103.) The Washington Hospital Center Surgeon recommended as the first step to treatment, Plaintiff receive a tendon injection.

104.) The Washington Hospital Center Surgeon immediately provided Unity Health Care with his finding, recommendation, and a referral for Plaintiff to be immediately scheduled to receive the treatment (injection), by another Washington Hospital Center Doctor.

105.) Plaintiff remained at Correctional Treatment Facility where Unity Health Care was responsible for providing Plaintiff medical care and treatment until May 30, 2017.

106.) Unity Health Care failed to ever provide Plaintiff any treatment for the nerve injury discovered by the Washington Hospital Center.

107.) In early 2017, Plaintiff was diagnosed with suffering from severe anxiety by Unity Health Care's mental health department attributed from his experiences outlined in the above mentioned facts of this complaint

108.) Unity Health Care's mental health department prescribed Plaintiff 200 MG of Sertraline a day to help Plaintiff treat this emotional injury, which he's still prescribed to this day.

109.) Unity Health Care deviated from reasonable accepted standards of care and proximately caused injury and damages to Plaintiff by neglecting to immediately admit Plaintiff in the Facility Infirmary upon his return from surgery on 9-19-16.

110.) Unity Health Care deviated from reasonable accepted standards of care and proximately caused injury and damages to Plaintiff by failing to update and provide Plaintiff a renewed Doctor's Order for "No restraints to left upper extremity", and recklessly informing CCA-CTF Security it was safe and harmless

for them to apply flexcuff restraints to Plaintiff's injured and wounded left upper extremity.

111.) Unity Health Care deviated from reasonable accepted standards of care and proximately caused injury and damages to Plaintiff by failing to immediately provide Plaintiff medical care and treatment for the nerve injury he suffered during surgery on 9-19-16.

112.) Unity Health Care caused Plaintiff to endure unnecessary pain and suffering due to the actions and inactions described in the above complaint.

113.) Unity Health Care caused Plaintiffs medical treatment and recovery to be delayed unreasonably due to the actions and inactions described in the above complaint.

114.) Unity Health Care violated Plaintiff's privacy rights by allowing CCA-CTF Security staff to be present and participate in "Priviledged and Confidential" medical discussions with Plaintiff, especially on or about 9-30-16.

115.) Plaintiff demands damages of $1,000,000.,
to pay any past and future medical/mental health
treatment needed as a resulted of the injuries
caused by Unity Health Care. As well as to
compensate Plaintiff for any future loss of wages
and pain and suffering caused as a result of
injuries created by Unity Health Care's Medical
Malpractice and Negligence.

End Statement.

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

Jason Thompson
_____
Plaintiff

vs.

Unity Health Care
_____
Defendant

**17 - 0 0 0 6 1 0 6**

Case Number _____

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jason Thompson #31082-007
_____
Name of Plaintiff's Attorney

3901 Klein Blvd
_____
Address

Lompoc, Ca. 93436
_____

_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오.          ፕላ ፐግርኛ ትርጉም ለማግኘት (202) 879-4828   ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                      Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
Demandante

contra

_____                    Número de Caso: _____
Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____                    *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

                                                    Por: _____
_____                                        Subsecretario
Dirección

                                                    Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

만일번역이필요하시면(202) 879-4828 로전화하십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET          **17 - 0 0 0 6 1 0 6**

_Jason Thompson_                    Case Number: _____

vs

_Unity Health Care_                 Date: _____

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* _Jason Thompson_ | Relationship to Lawsuit |
|---|---|
| Firm Name: | ☐ Attorney for Plaintiff |
| | ☑ Self (Pro Se) |
| Telephone No.:          Six digit Unified Bar No.: | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury      ☐ 6 Person Jury      ☑ 12 Person Jury
Demand: $ _1,000,000_ _____      Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.:_____      Judge: _____      Calendar #:_____

Case No.:_____      Judge: _____      Calendar#:_____

---

NATURE OF SUIT:      *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

☐ 01 Breach of Contract          ☐ 14 Under $25,000 Pltf. Grants Consent      ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty          ☐ 17 OVER $25,000 Pltf. Grants Consent      ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument       ☐ 27 Insurance/Subrogation                  ☐ 26 Insurance/Subrogation
☐ 07 Personal Property                Over $25,000 Pltf. Grants Consent            Over $25,000 Consent Denied
☐ 13 Employment Discrimination   ☐ 07 Insurance/Subrogation                  ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees           Under $25,000 Pltf. Grants Consent           Under $25,000 Consent Denied
                                 ☐ 28 Motion to Confirm Arbitration
                                      Award (Collection Cases Only)

---

**B. PROPERTY TORTS**

☐ 01 Automobile               ☐ 03 Destruction of Private Property      ☐ 05 Trespass
☐ 02 Conversion               ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

---

**C. PERSONAL TORTS**

☐ 01 Abuse of Process            ☐ 10 Invasion of Privacy           ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection     ☐ 11 Libel and Slander                  Not Malpractice)
☐ 03 Assault and Battery         ☐ 12 Malicious Interference        ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution         ☐ 19 Wrongful Eviction
☐ 05 Deceit (Misrepresentation)  ☐ 14 Malpractice Legal             ☐ 20 Friendly Suit
☐ 06 False Accusation            ☑ 15 Malpractice Medical (Including Wrongful Death)  ☐ 21 Asbestos
☐ 07 False Arrest                ☐ 16 Negligence- (Not Automobile,  ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                            Not Malpractice)              ☐ 23 Tobacco
                                                                    ☐ 24 Lead Paint

SEE REVERSE SIDE

CV-496/January 2016

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 26 Petition for Civil Asset
  Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D. REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_Jason Thompson_
Attorney's Signature

_8-9-17_
Date

CV-496/ June 2015



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Telephone: (202) 879-1133 • Website: www.dccourts.gov

JASON THOMPSON
   Vs.                            C.A. No.     2017 CA 006106 M
UNITY HEALTH CARE

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge TODD E EDELMAN
Date:  September 6, 2017
Initial Conference: 9:30 am, Friday, December 01, 2017
Location:  Courtroom 212
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief    Judge    Robert    E.    Morin